## ASHBY v. FRANCIS.
### No. 11905.

Circuit Court of Appeals, Eighth Circuit.
April 22, 1941.

J. M. Haw, of Charleston, Mo., for appellant.

L. D. Joslyn, of Charleston, Mo. (James A. Finch and James A. Finch, Jr., both of Cape Girardeau, Mo., on the brief), for appellee.

Before WOODROUGH, JOHNSEN, and VAN VALKENBURGH, Circuit Judges.

WOODROUGH, Circuit Judge.

Mrs. E. A. Ashby, bankrupt, appeals from an order sustaining the objections of a creditor and denying her discharge in bankruptcy.

It appears that she is a housewife and never had any business or any property excepting her wearing apparel and some articles of personal adornment herein referred to. But she had signed a note with her husband to Mrs. Mayme V. Francis and a judgment was rendered thereon against her husband and herself in the sum of $7,650.25 in the year 1926. The husband was discharged from the obligation in bankruptcy but the judgment stood against the appellant. An attempt made to revive it in 1936 appears to have failed, but on September 14, 1937, a summons was served upon her in a new suit for revivor, and judgment for upwards of $14,000, including interest and costs, was entered against her on December 27, 1937. She filed voluntary petition and schedules in bankruptcy on October 22, 1938, and Mrs. Francis is a general creditor of the estate on account of her judgment. As such creditor she filed objections and amended objections to the discharge of the bankrupt upon which issues were joined, and after striking out certain specifications the referee heard evidence and made report of his findings and conclusions upon which review was had in the district court resulting in the order appealed from.

Although it is earnestly contended that the charges of the "Amended Motion for Denial of Discharge" do not present facts sufficient to "satisfy the court" that the bankrupt had done or failed to do any one or more of the things specified in 11 U.S.C.A. § 32, sub. c, as grounds for refusing discharge, we have been required to examine all the testimony, and in view of our conclusions we assume, as considered by the referee and the court below, that there was a sufficient charge that the bankrupt had in conspiracy with her husband concealed and transferred her personal jewelry (properly found by the referee to be of the value of $700) with intent to defraud her creditors, contrary to 11 U.S.C.A. § 32, sub. c(1 and 4).

It appears that the jewelry in question consisted of an engagement ring given to Mrs. Ashby by her husband more than twenty years before the hearing, and other articles which he had given her on birthdays and other occasions during the married life. She had worn it all during the years subsequent to 1926 while the judgment of the objecting creditor was outstanding against her and no effort was ever made to subject any of it to the judgment. In August of 1937 the son of Mr. and Mrs. Ashby had completed his high school course and Mrs. Ashby was very desirous of putting him in a military school at Roswell, New Mexico. The father preferred the Missouri University, which would cost much less. The mother was insistent and prevailed, but to meet the large expense determined to sacrifice her jewelry. A loan of $1,500 was obtained from Mr. Ed Davis, an old friend of her husband; the jewelry was pledged with him on August 24th or 25th of 1937 and a part of the proceeds equal to the value of the jewelry was applied to the payment of the entrance fees of the son at the military school at Roswell, in September of 1937. Subsequently Mr. Davis took a chattel mortgage of the jewelry for the amount of his loan but delivered the jewelry back because he did not want the care of keeping it. Thereafter in January of 1938 Mrs. Ashby and her husband sold the jewelry to a pawnbroker in St. Louis for $700 and that amount was paid over to Mr. Davis and applied on the

indebtedness due him, on January 8, 1938. When Mrs. Ashby filed her schedule in bankruptcy on October 22, 1938, she had none of the jewelry in question and honestly believed that she had parted with all her right in it and that the proceeds had been devoted to the son's tuition at the school which she had chosen in opposition to her husband. She took no part in obtaining the loan from Mr. Davis nor in the sale to the pawnbroker. Her only actual connection with the matter was to determine the selection of the school for the son and turn over her jewels and all responsibility of getting the money and applying it to the tuition to her husband. She signed the chattel mortgage to Mr. Davis, the bill of sale to the pawnbroker, the check to Mr. Davis for the proceeds of $700 and her petition and schedules in bankruptcy under her husband's direction and in accordance with her custom of signing papers at his instance without questioning.

But though Mrs. Ashby's innocence of any intention to secrete any property from creditors in bankruptcy, or to defraud them, is very clear, the picture as to her husband, Mr. Ashby, is different. It appears that he could have gotten the money for the son's tuition from his lifelong friend, Mr. Davis, without pledging Mrs. Ashby's jewelry. Mr. Davis made the loan, as he had been making other loans to Mr. Ashby over a long course of years, entirely in reliance on Mr. Ashby.

The St. Louis pawnbroker also agreed with Mr. Ashby after Mrs. Ashby had gone out of his store and in her absence that he would sell the jewelry back to Mr. Ashby within thirty days for $735, and Mr. Ashby, unknown to his wife, took advantage of that agreement and got the jewelry back in his own possession within that period. He kept it and did not let his wife know that he had it until after the creditor's attorney had found out the facts from the St. Louis pawnbroker. He admitted that he had it in his pocket at the hearing.

The referee's findings reflect careful study of the testimony before him. He reported that "the bankrupt's testimony, her manner and bearing on the witness stand, her utter lack of business experience, her total ignorance of the provisions of the Bankruptcy Act and her implicit confidence and reliance on her husband's advice and instructions are convincing to the effect that she had no criminal intent in any of the transactions involved * * *. Hearing and seeing her testify and the manner in which she testified clearly convinces the referee to believe that she had no intention to defraud any one and that all of her actions were not prompted by her own desires but were all concocted and advised by her husband, Frank K. Ashby. The referee finds that there is not sufficient proof to justify a finding that the bankrupt is guilty of having committed an offense punishable by imprisonment under the Bankruptcy Act and that she did not perpetrate a scheme to hinder and defraud her creditors, although keeping in mind at all times that transactions between husband and wife should be carefully scrutinized."

■ Our own examination of the testimony has convinced that these findings of the referee are in accord with the testimony, and the order denying the bankrupt her discharge was erroneous and should be reversed and the discharge granted.

■ The referee also found that the husband of the bankrupt (who is an attorney) had conducted the proceedings of his wife in the bankruptcy and had "managed all transactions involved in this controversy". "That the jewelry involved or its value properly belongs to the bankrupt estate and should be delivered to the trustee of said estate for the benefit of the bankrupt's creditors". We think these findings of the referee are fully sustained by the evidence and that Mr. Ashby conceived and carried out the transactions in respect to the jewelry and conducted the proceedings in bankruptcy with the intent of depriving the bankrupt estate of the value thereof.

The order denying discharge is reversed and the cause is remanded for further proceedings in accordance with this opinion.